IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STACY FORD and STEPHEN FORD, Individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SECOND ROUND SUB LLC and QUANTUM3 GROUP LLC, <br><br> Defendants. | Civil Action No. 21-513 |

## MEMORANDUM OPINION

This putative class action was filed by Plaintiffs Stacy Ford and Stephen Ford ("Plaintiffs") against Defendants Second Round Sub, LLC ("Second Round") and Quantum3 Group, LLC ("Quantum3") (collectively, "Defendants"), and alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, arising from Defendants' conduct in Plaintiffs' Bankruptcy Court action. Presently before the Court are the Motions for Judgment on the Pleadings and briefs in support filed by Second Round (Docket Nos. 41, 42) and Quantum3 (Docket Nos. 43, 44), the brief in opposition to both motions filed by Plaintiffs (Docket No. 47), and the replies filed by Second Round (Docket No. 56) and Quantum3 (Docket No. 54). In addition to the motions and briefs, the Court has considered the supplements filed by Quantum3 (Docket No. 57) and Plaintiffs (Docket No. 58).

For the reasons set forth below, Defendants' motions will both be granted.

### I. BACKGROUND

Since the parties are well-acquainted with the factual background of this case, the Court will present here an abbreviated version of the facts that are relevant to the motions presently

1

before the Court.[1]  On February 8, 2020, Plaintiffs jointly filed a voluntary petition for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Western District of Pennsylvania (*In re Ford*, No. 20-20471, Docket No. 1 (Bankr. W.D. Pa.) (the "Bankruptcy")).  (Docket Nos. 11 (Plaintiffs' Amended Class Action Complaint, hereinafter, the "Amended Complaint"), ¶ 17; 47 at 10).  In the course of their business operations, Second Round buys consumer obligations and debts from other creditors, and Quantum3 files proofs of claim ("POCs") in bankruptcy proceedings on behalf of companies including Second Round.  (Docket No. 11, ¶¶ 7, 11, 12).

On March 20, 2020, Quantum3 filed a POC on behalf of Second Round in Plaintiffs' Bankruptcy.  (Docket Nos. 11, ¶¶ 12, 14, 17; 47-1).  The POC was for an outstanding balance on a Synchrony Bank account (the "Account") that had been issued to Plaintiffs, and that Second Round had acquired from the Account's original creditor.  (Docket Nos. 11, ¶¶ 7, 14, 17; 47-1).  The POC represented that the Account was owed to Second Round in the amount of $5,081.95, but that POC did not indicate that such total included interest or other charges.  (Docket Nos. 11, ¶¶ 18, 19; 47-1).  Plaintiffs, through counsel, objected to the POC.  (Docket No. 11, ¶ 21; Bankruptcy Docket No. 42).  On June 4, 2020, Quantum3 filed an amended POC in Plaintiffs' Bankruptcy.  (Docket No. 11, ¶ 22).  Although the amended POC again represented that the Account was owed to Second Round in the amount of $5,081.95, statements attached to the amended POC showed that the total owed on the Account included $4,320.47 in unpaid principal and $761.71 in unpaid finance charges, which had been charged at a rate as high as 19.99%.  (Docket Nos. 11, ¶¶ 23-26; 47-2).  Plaintiffs withdrew their objection to the original POC on

---

[1] When deciding a motion for judgment on the pleadings, "the court must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party," and "may only consider the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (internal quotation marks and citations omitted).  Accordingly, the Court has considered and refers herein to certain documents that were filed in Plaintiffs' Bankruptcy case, which are matters of public record upon which Plaintiffs' claims in this action are based.

June 16, 2020, and thereafter they did not object to the amended POC.  (Bankruptcy Docket No. 56).  Plaintiffs' Bankruptcy plan was confirmed on September 2, 2020.  (Bankruptcy Docket No. 76).

On March 18, 2021, Plaintiffs filed the present action in the Court of Common Pleas of Allegheny County, Pennsylvania, and Defendants timely removed the action to this Court on April 16, 2021.[2]  (Docket Nos. 1, 1-1, 1-2).  On May 14, 2021, Plaintiffs filed an Amended Class Action Complaint (the operative complaint here), which alleges that Defendants violated the FDCPA by filing, in Plaintiffs' Bankruptcy, false and misleading POCs that overstated the principal properly owed to Second Round on the Account.  (Docket No. 11).  Plaintiffs aver that Defendants made false, deceptive, or misleading representations to collect a debt in violation of Section 1692e of the FDCPA, and that Defendants used unfair or unconscionable debt collection practices in violation of Section 1692f of the FDCPA.  (*Id.* at 10-11, Counts I & II (citing 15 U.S.C. §§ 1692e, 1692f)).  Plaintiffs further allege that Defendants routinely engage in similar conduct in connection with other debts and other debtors.  (*Id.* ¶¶ 35, 37, 42, 56, 59).  Plaintiffs seek class certification, declaratory relief, and monetary damages (including actual, statutory, and other damages, along with pre- and post-judgment interest) and attorney fees and costs.  (*Id.* at 12).

Defendants filed their Answers with Affirmative Defenses to Plaintiffs' Amended Class Action Complaint on May 28, 2021.  (Docket Nos. 15, 16).  On July 13, 2021, Defendants filed their Amended Answers with Affirmative Defenses to Plaintiffs' Amended Class Action Complaint.  (Docket Nos. 23, 24).  As explained, *supra*, Defendants have both filed Motions for Judgment on the Pleadings.  The motions have been fully briefed by the parties and are now ripe for decision.

---

[2]  The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## II. <u>STANDARD OF REVIEW</u>

According to Federal Rule of Civil Procedure 12(c), "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A court will only grant judgment on the pleadings if the moving party "clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005); *see also Knepper v. Rite Aid Corp.*, 675 F.3d 249, 257 (3d Cir. 2012); 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1367 (2019) ("The motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court.").

A court, when considering a motion for judgment on the pleadings, "must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 390 (3d Cir. 2012). As in the context of a Rule 12(b)(6) motion, the complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Court of Appeals for the Third Circuit has set forth a three-step analysis for courts to use in determining whether a claim is plausible. First, a court should "outline the elements a plaintiff must plead to state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009). Second, the court should "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Bistrian*, 696 F.3d at 365; *see also Iqbal*, 556 U.S. at 679 (explaining that "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual

4

allegations."). Third, the court should assume that all well-pled factual allegations are true, "and then 'determine whether they plausibly give rise to an entitlement to relief.'" *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679).

### III. DISCUSSION

The Third Circuit Court of Appeals has explained that, in this Circuit, a claim under the FDCPA has four elements. *See Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 328 (3d Cir. 2022). The first three elements are defined by statute: the plaintiff must be a "consumer," the defendant must be a "debt collector," and the challenged practice must relate to the collection of a "debt." *See id.* (citing 15 U.S.C. §§ 1692a(3), 1692a(6), 1692a(5)). Fourth, the defendant must "have violated 'the FDCPA in attempting to collect the debt.'" *See id.* (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)). It is the fourth element that appears to be contested by the parties here.

As explained, *supra*, Plaintiffs allege in their Amended Complaint that Defendants violated two provisions of the FDCPA, Sections 1692e and 1692f, in attempting to collect the amount owed on the Account. Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Actions violative of Section 1692e include the "false representation of . . . the character, amount, or legal status of any debt," and the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* §§ 1692e(2)(A), 1692e(10). Section 1692f prohibits unfair or unconscionable means of collecting debts, including that debt collectors may not collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1).

5

More specifically, Plaintiffs allege that Defendants violated these sections of the FDCPA by overstating the principal in the Account that Plaintiffs owed to Second Round. Plaintiffs aver that Defendants overstated the amount that was properly owed in two ways: (1) by seeking to collect the full amount owed on the Account, including interest that had accrued at a rate exceeding 6% on the debt underlying the POCs, when Second Round was not licensed under Pennsylvania law to charge interest at that rate; and (2) by failing to itemize in the POCs the amount owed on the Account, separately, as principal, interest, and fees. Defendants argue in their Motions for Judgment on the Pleadings that Plaintiffs fail to state a plausible claim under the FDCPA, and that Defendants are therefore entitled to judgment as a matter of law.

### A. <u>Whether Defendants Violated the FDCPA Based on the Underlying Interest Rate</u>

First, Plaintiffs argue that Defendants violated Sections 1692e and 1692f of the FDCPA based on the premise that Defendants violated Pennsylvania's Consumer Discount Company Act ("CDCA"), 7 P.S. § 6201 *et seq.*, by attempting to collect interest that had previously accrued at a rate greater than 6% annually, which they are not permitted to do. The Third Circuit recently addressed a very similar argument involving the CDCA in its opinion in *Lutz v. Portfolio Recovery Associates, LLC*, 49 F.4th 323 (3d Cir. 2022). The court began its analysis in *Lutz* with remarks concerning Pennsylvania's long history, dating back to colonial times, of banning annual interest rates above 6%. *See id.* at 329. However, in response to the Great Depression and recommendations that credit be extended to consumers more readily, the Pennsylvania legislature enacted the CDCA, which "permits entities licensed by the Pennsylvania Department of Banking and Securities to charge interest at a higher annual rate, up to 24%, for loans under a certain amount, currently $25,000." *Id.* (citing 7 P.S. §§ 6203.A, 6213.E, 6217.1.A). The CDCA also "imposed restrictions on unlicensed entities 'in the business of negotiating or making

6

loans or advances of money on credit, in the amount or value of twenty-five thousand dollars ($25,000) or less.'" *Id.* (quoting 7 P.S. § 6203.A). Such "unlicensed entities may not 'charge, *collect*, contract for[,] or receive interest' at an annual interest rate above 6%." *Id.* (quoting 7 P.S. § 6203.A (emphasis added in *Lutz*)).

Here, Plaintiffs argue that Defendants are liable for violations of the FDCPA because Second Round is subject to the CDCA restrictions discussed in *Lutz*. Based on this premise that Second Round is an unlicensed entity subject to the CDCA, Plaintiffs reason that it was illegal for Defendants to attempt to collect interest that had previously accrued on Plaintiffs' Account at an interest rate above 6% (here, up to 19.99%), even though the previous creditor (Synchrony Bank) was permitted to charge that rate. Relying on this contention that such conduct by Defendants violated the CDCA, Plaintiffs further argue that such conduct also violated the FDCPA because, through such actions, Defendants made false, misleading, and deceptive statements about the amount of the principal or the character of the debt owed on the Account, and Defendants tried to collect a debt with interest and fees that Second Round was not entitled to collect or receive under Pennsylvania law.

After Plaintiffs filed this lawsuit, the Third Circuit issued its opinion in *Lutz*, which squarely addresses Plaintiffs' CDCA/FDCPA theory of liability.[3] *See* 49 F.4th at 323. Although *Lutz* did not also involve Bankruptcy proceedings, the plaintiff in that case (Lutz), like Plaintiffs here, brought a putative class action against a debt collection firm (the debt collector) that had purchased Lutz's outstanding credit card debt, which had accrued interest at an annual rate of 22.9%. *See id.* at 325. Also similar to the present case, Lutz alleged that the defendant debt

---

[3] Quantum3 filed the opinion in *Lutz* as supplemental authority in this case. (Doc. 57). Notably, the plaintiff in *Lutz* was represented by Plaintiffs' counsel in this case.

7

collector had violated Sections 1692e and 1692f of the FDCPA by making false statements about amounts of outstanding credit card debt and by collecting debts not permitted by law in violation of the CDCA.  *See id.* at 325-26.  The defendant filed a motion to dismiss, and a fellow member of this Court, the Honorable Christie Weigand, dismissed Lutz's lawsuit with prejudice.  *See id.* at 326.

On appeal, the Third Circuit affirmed Judge Weigand's judgment.  *See Lutz*, 49 F.4th at 326.  In so ruling, the Court of Appeals found that Lutz's claims hinged on the premise that the debt collector violated the CDCA by attempting to collect interest that had previously accrued at a rate greater than 6% annually.  *See id.* at 328-29.  Lutz's theory of liability therefore depended on the debt collector being subject to the CDCA's restrictions.  *See id.* at 329.  In moving to dismiss, the debt collector disputed the applicability of the CDCA's restrictions to it, in part, "because it is not 'in the business of negotiating or making loans or advances,'" as is required for the CDCA to apply to an entity.  *Id.* at 329-30 (citing 7 P.S. § 6203.A).  Although Judge Weigand had relied on a different argument in granting the debt collector's motion to dismiss, on appeal the Third Circuit noted that the argument as to whether the debt collector was "in the business of negotiating or making loans or advances" had narrowed in briefing, since there was no real debate that the debt collection firm did not "make" loans or money advances.  *Id.* at 330.  Accordingly, the Third Circuit remarked that the keystone of that case on appeal had become whether the debt collector was "in the business of *negotiating* loans or advances and thus subject to the CDCA."  *Id.* (emphasis added).  If the debt collector was not in that business, then the CDCA did not apply to it, and the debt collector would prevail.  *See id.*

The Third Circuit then examined whether Lutz's complaint contained plausible allegations that the debt collector was in the business of "negotiating" loans or advances.  *See*

8

*Lutz*, 49 F.4th at 331.  To answer that question, the court had to discern the meaning of the term "negotiate." *See id.* at 331-33.  Since the CDCA does not expressly define that term, the court engaged in a thorough analysis of the word using canons of statutory interpretation, concluding that "negotiate" as used in the CDCA does not refer to a "transfer" (as with a negotiable instrument), but instead means "to bargain." *Id.*  The Third Circuit determined that nowhere did Lutz specifically allege that the debt collector was in the business of negotiating, or bargaining for, loans or advances. *See id.* at 333-34.  Additionally, the court found that – giving Lutz the benefit of reasonable inferences at the motion-to-dismiss stage – based on allegations that the debt collector *purchased* debts, it was not reasonable to infer that an entity that purchases charged-off debt would also be in the business of negotiating or bargaining for the initial terms of loans or advances. *See id.*  And, if anything, the fact that Lutz's complaint alleged that the previous creditor – not the debt collector – charged the high interest rate that was at issue, cut against any such inference. *See id.*  Thus, the court found that Lutz's allegations did not support an inference that the debt collector was in the business of negotiating loans or advances.  The court further concluded that, without such a favorable inference, Lutz could not establish that the debt collector was subject to the CDCA, and because his FDCPA claims depended on an underlying violation of the CDCA, those claims both "collapsed," and Judge Weigand had properly dismissed them. *Id.* at 334.

In the present case, as in *Lutz*, Plaintiffs' allegations that Defendants violated the FDCPA are based, in part, on their contention that Defendants, neither of which was licensed under the CDCA, violated the CDCA by attempting to collect a debt that included interest charged at a rate greater than 6%.  Also like in *Lutz*, the viability of Plaintiffs' claims depends on whether the CDCA applies to Defendants, *i.e.*, whether they are in the business of "negotiating or making

9

loans or advances." In briefing, Second Round asserts that, as a debt buyer, it merely attempts to collect on debts that were at one time accruing interest when owned by the original creditors. (Docket No. 56 at 7). Similarly, Quantum3 argues that it, too, does not negotiate or make loans or advances of money on credit. (Docket No. 54 at 5). Therefore, the Court must decide whether Plaintiffs plausibly allege in the Amended Complaint that Defendants are in the business of negotiating (bargaining for) or making loans or advances.

Turning to the allegations regarding Defendants' business practices, the Court notes that Plaintiffs allege in the Amended Complaint that "Second Round buys consumer debt and attempts to collect that debt for profit," and that "Quantum3 helps debt collectors like Second Round to collect debt from consumers." (Docket No. 11, ¶¶ 7, 11). Based on such averments, the Court finds that Plaintiffs do not specifically allege that Defendants are in the business of negotiating or making loans or advances.

However, as Plaintiffs' Amended Complaint receives the benefit of reasonable inferences at this stage of the litigation, the Court must also consider the remaining allegations and whether they plausibly allege that either Defendant is in the business of negotiating or making loans or advances. Additional allegations as to Defendants' business practices include that "Second Round purchases consumer debt at steep discounts, most (if not all) times for pennies on the dollar," that "Quantum3 attempted to collect debt from the Fords and other Pennsylvania residents by filing proofs of claim on behalf of Second Round and other debt buyers/collectors in pending consumer bankruptcy cases," and that "Second Round hired Quantum3 to assist it in the collection of debt with respect to the Fords and other Pennsylvania residents." (Docket No. 11, ¶¶ 8, 9, 12). The Amended Complaint also alleges that "Second Round regularly directs its agents, like Quantum3, to file POCs that only list principal on the defaulted open-end credit

10

accounts that Second Round purchases," and that "Quantum3 regularly files POCs that only list principal on the defaulted open-end credit accounts that debt buyers, like Second Round, purchase." (Docket No. 11, ¶¶ 35, 37). In sum, Plaintiffs' allegations indicate that Second Round purchases debts and Quantum3 files proofs of claim. As in *Lutz*, even with such allegations as a starting point, it is not reasonable to infer that an entity that purchases debts and later attempts to collect on such debts, or an entity that files proofs of claim on behalf of creditors, would also be in the business of negotiating (bargaining for) or making the initial terms of loans or advances.

Therefore, with the understanding that to "negotiate" means to "bargain" and not to "transfer," as the Third Circuit set forth in *Lutz*, the Court finds that Plaintiffs' allegations do not support an inference that Defendants are in the business of negotiating or making loans or advances. Without such a favorable inference, Plaintiffs cannot establish that Defendants are subject to the CDCA and its limitations on collecting interest. Accordingly, to the extent Plaintiffs' FDCPA claims in Counts I and II depend on an underlying violation of the CDCA by Defendants, those claims "collapse" as they did in *Lutz*, and the Court finds that Plaintiffs have failed to state a plausible claim based on such alleged conduct.

### B.  Whether Defendants Violated the FDCPA Based on an Alleged Failure to Itemize in the POCs

Plaintiffs also allege that Defendants violated the FDCPA because the representations made in the POCs – filed by Quantum3 on behalf of Second Round in Plaintiffs' Bankruptcy – were false, deceptive, or misleading under Section 1692e, and constituted unfair or unconscionable means to collect or attempt to collect a debt under Section 1692f.[4] *See* 15 U.S.C.

---

[4] While, in the Amended Complaint, Plaintiffs appear to take issue with both the original POC and the amended POC, in their brief opposing Defendants' motions, Plaintiffs appear to focus on the original POC being violative of the FDCPA.

§§ 1692e, 1692f.  Specifically, Plaintiffs allege that Defendants represented in the POCs that the amount owed to Second Round on the Account consisted of only principal and did not include interest and fees, even though the total did include interest and fees.  Thus, Plaintiffs argue that Defendants' failure to itemize the Account's principal, interest, and fees in the POCs in Plaintiffs' Bankruptcy violated the FDCPA.  In their Motions for Judgment on the Pleadings, however, Defendants argue that the FDCPA does not apply to circumstances such as those presented in this case, and that Plaintiffs have failed to state a plausible claim against them under that statute.

Notably, claims similar to Plaintiffs' were dismissed by another member of this Court, the Honorable Susan Paradise Baxter, in two cases that were before her, *Yavorka v. Midland Credit Mgmt., Inc.*, C.A. No. 19-122 Erie, 2020 WL 5747832 (W.D. Pa. Sept. 25, 2020), and *Fike v. Portfolio Recovery Assocs., LLC*, C.A. No. 19-144 Erie, 2020 WL 5747811 (W.D. Pa. Sept. 25, 2020).  The plaintiffs in *Yavorka* and *Fike*,[5] like Plaintiffs here, had previously filed for bankruptcy, and the defendants in those cases, like Defendants here, were in the business of purchasing consumer debts at a discount from other creditors for the purpose of collection on those debts, or were in the business of collecting debts and had filed POCs for another defendant.  *See Yavorka*, 2020 WL 5747832, at *1; *Fike*, 2020 WL 5747811, at *1.  The plaintiffs in *Yavorka* and *Fike* alleged in their actions in this District Court that the defendants' failure to itemize the principal, interest, and fees in the POCs filed in the plaintiffs' bankruptcy proceedings led to overstating the principal owed in those POCs.  *See Yavorka*, 2020 WL 5747832, at *1-2; *Fike*, 2020 WL 5747811, at *1.  As in the present case, the *Yavorka* and *Fike* plaintiffs alleged that such conduct violated the FDCPA's prohibition on making false or

---

[5]   Plaintiffs' counsel in this case also represented the plaintiffs in *Yavorka* and *Fike*.

misleading representations to collect a debt under Sections 1692e, and also violated Section 1692f, and the plaintiffs sought class certification, monetary damages, and declaratory relief. *See Yavorka*, 2020 WL 5747832, at *1; *Fike*, 2020 WL 5747811, at *1. Like Defendants here, the defendants in *Yavorka* filed a motion for judgment on the pleadings, and the defendant in *Fike* filed a motion to dismiss. *See id.* Upon consideration of the parties' arguments, Judge Baxter found that the plaintiffs in *Yavorka* and *Fike* failed to allege conduct violative of the FDCPA, so she granted the defendants' motions and dismissed the plaintiffs' claims. *See Yavorka*, 2020 WL 5747832, at *4; *Fike*, 2020 WL 5747811, at *3.

Upon consideration, the Court agrees with the sound reasoning of Judge Baxter's opinions in *Yavorka* and *Fike*, and the Court will rule similarly on the claims in this case to the extent those claims rely on Defendants' failure to itemize in the POCs filed in Plaintiffs' Bankruptcy. In so holding, the Court emphasizes, first, that the statutory language of the FDCPA itself does not require a debt collector to itemize a debt into principal, interest, and fees. *See Yavorka*, 2020 WL 5747832, at *2; *Fike*, 2020 WL 5747811, at *2. Additionally, the Court is mindful of the fact that, although the Third Circuit has yet to address this issue, other "courts that have considered the issue have consistently determined that a debt collector is not required to itemize a debt into principal, interest, and other charges to comply with the FDCPA." *Id.* (both *Yavorka* and *Fike* citing cases including *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 240 (2d Cir. 2019) (explaining that, under Section 1692g of the FDCPA, the "'amount of the debt,' then, signifies the total, present quantity of money that the consumer is obligated to pay," and that nothing in the statute required the debt collector to inform the consumer "of the constituent components of that debt"); *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 126 (4th Cir. 2014) (with regard to whether a misrepresentation is material under Section 1692e,

13

"where a demand letter misstates interest as principal but accurately states the total amount owed, such a technical error is not material"); *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757 (7th Cir. 2009) (explaining that "a debt collector need not break out principal and interest; it is enough to tell the debtor the bottom line" (citing *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838 (7th Cir. 2007))); *Wilson v. Trott Law, P.C.*, 118 F. Supp. 3d 953, 963 (E.D. Mich. 2015) (stating that "there is no language in the FDCPA that requires a debt collector to provide a complete breakdown of the debt owed"); *Moran v. Greene & Cooper Attorneys LLP*, 43 F. Supp. 3d 907, 914 (S.D. Ind. 2014) ("A debt collector need not 'itemize' the debt, so long as its statement of the total is clear and accurate."); *Meier v. Law Offices of Weltman, Weinberg & Reis, L.P.A.*, Civ. Action No. 10-262, 2011 WL 2039113, at *7 (W.D. Pa. May 5, 2011) (finding "no merit to Plaintiff's argument that Defendant violated the FDCPA by failing to itemize the amounts due and how they increased over time"), Report and Recommendation adopted in full by *Meier*, 2011 WL 2036693 (W.D. Pa. May 24, 2011); *Scioli v. Goldman & Warshaw P.C.*, 651 F. Supp. 2d 273, 281 n.15 (D.N.J. 2009) ("[T]he Court does not hold that a debt collector *must* itemize the fees and costs it seeks in order to comply with the FDCPA.")).

Since the FDCPA itself does not specifically require that debts be itemized, Plaintiffs here – like the plaintiffs in *Yavorka* and *Fike* – appear to rely upon, and cite to, the requirements of the Federal Rules of Bankruptcy Procedure in alleging violations of the FDCPA. In the Amended Complaint, Plaintiffs allege that Defendants engaged in certain conduct and then Plaintiffs cite and discuss the requirements of Federal Rule of Bankruptcy Procedure 3001(c)(2), which requires every POC seeking pre-bankruptcy interest, fees, expenses, or other charges to be accompanied by an itemized statement of the claim. (Docket No. 11, ¶¶ 39, 40 (citing Fed. R. Bankr. P. 3001(c)(2) and Advisory Committee Notes to 2011 amendments)).

Specifically, Plaintiffs allege, in part, that "Second Round regularly directs its agents, like Quantum3, to file POCs that only list principal on the defaulted open-end credit accounts that Second Round purchases."  (Docket No. 11, ¶ 35).  Plaintiffs also allege that "Quantum3 regularly files POCs that only list principal on the defaulted open-end credit accounts that debt buyers, like Second Round, purchase."  (*Id.* ¶ 37).  Plaintiffs then state the legal conclusion that both of these practices are material violations of the FDCPA.  (*Id.* ¶¶ 36, 38).  Plaintiffs further state that the Bankruptcy Rules "were amended in 2011 to specifically require the itemization of interest and fees on proof of claim filings regarding open-end consumer credit accounts."  (*Id.* ¶ 39 (citing Fed. R. Bankr. P. 3001(c)(2)(A) and a Bankruptcy Court case, *Maddux v. Midland Credit Mgmt., Inc.*, 567 B.R. 489, 493-95, 500 (Bankr. E.D. Va. 2016))).  Finally, Plaintiffs reference the Bankruptcy Rule amendment's purpose, quoting the Advisory Committee Notes to the 2011 amendments, which state that "[w]hen the holder of a claim seeks to recover—in addition to the principal amount of a debt—interest, fees, expenses, or other charges, the [POC] must be accompanied by a statement itemizing these additional amounts with sufficient specificity to make clear the basis for the claimed amount."  (*Id.* ¶ 40).

Accordingly, the Court finds that, similar to the plaintiffs in *Yavorka* and *Fike*, Plaintiffs here implicitly rely on alleged violations of the Bankruptcy Rules in an attempt "to create a cause of action under the FDCPA that would not otherwise exist outside of bankruptcy," and, as Judge Baxter aptly explained:

> This they cannot do.  If failing to itemize the components of a debt in a pre-bankruptcy collection letter does not violate the FDCPA, then the failure to itemize the same debt within the context of a bankruptcy proceeding cannot lead to a different result.  Certainly, the language of the Act does not provide for such disparity.

*Yavorka*, 2020 WL 5747832, at *2; *Fike*, 2020 WL 5747811, at *2.

The Court agrees with such reasoning.  The Court is also of the opinion that, since the FDCPA does not expressly require the itemization of debts into principal, interest, and other charges, then "[c]reating a violation of the FDCPA based upon the application of a Bankruptcy Rule would unnecessarily disrupt the 'delicate balance of a debtor's protections and obligations' recognized by the Supreme Court in *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407 (2017)." *Yavorka*, 2020 WL 5747832, at *3; *Fike*, 2020 WL 5747811, at *2.  In *Johnson*, the Supreme Court held that filing an obviously time-barred POC was not unfair or unconscionable under the FDCPA, even though it could be sanctionable under the Federal Rules of Bankruptcy Procedure. *See Johnson*, 137 S. Ct. at 1414-15.  In so finding, the Supreme Court explained:

> The [FDCPA] and the [Bankruptcy] Code have different purposes and structural features.  The [FDCPA] seeks to help consumers . . . by preventing consumer bankruptcies in the first place.  The Bankruptcy Code, by way of contrast, creates and maintains what we have called the "delicate balance of a debtor's protections and obligations."
>
> To find the [FDCPA] applicable here would upset that "delicate balance."

*Id.* (internal citations omitted).

Moreover, the Court notes that as Judge Baxter pointed out, in light of *Johnson*, the United States District Court for the District of Minnesota also considered claims similar to those presented here and in *Yavorka* and *Fike* under Section 1692e of the FDCPA, and that district court also concluded that the FDCPA did not apply in such situations, explaining that "'[t]he failure to abide by the Federal Rules of Bankruptcy Procedure does not necessarily provide a basis for an actionable FDCPA claim.'"  *Yavorka*, 2020 WL 5747832, at *3; *Fike*, 2020 WL 5747811, at *3 (quoting *Gibbs v. Resurgent Cap. Servs., L.P.*, Case No. 19-cv-1844, 2020 WL 319657, at *1 (D. Minn. Jan. 21, 2020), and *Morris v. Midland Funding, LLC*, Case No. 19-cv-795, 2019 WL 4142714, at *2 (D. Minn. Aug. 29, 2019)).  The Minnesota District Court further

explained that it did "not necessarily read *Johnson* to foreclose all FDCPA claims that implicate the Bankruptcy Code," but that there the plaintiff had "not provided a plausible legal basis for applying the FDCPA to the non-itemized [POCs] at issue in [that] civil proceeding." *Morris*, 2019 WL 4142714, at *3; *see also Gibbs*, 2020 WL 319657, at *2 & n.1 (finding, like in *Morris*, that *Johnson* was authoritative, and that the FDCPA did not apply to the defendant, although such ruling did not address whether *Johnson* forecloses all FDCPA claims that may implicate the Bankruptcy Code).

Along with Judge Baxter, this Court agrees with the Minnesota District Court's observations and accordingly finds that the FDCPA is inapplicable to Plaintiffs' claims here. *See Yavorka*, 2020 WL 5747832, at *3; *Fike*, 2020 WL 5747811, at *3. The Court is aware that, while its holding here is consistent with Judge Baxter's decisions in *Yavorka* and *Fike*, such holdings differ from that of another member of this Court, the Honorable Kim R. Gibson, in *Howard v. LVNV Funding, LLC*, Case No. 3:19-cv-93, 2020 WL 978653 (W.D. Pa. Feb. 28, 2020). However, as Judge Baxter noted in *Yavorka* and *Fike*, the opinion in *Howard* does not discuss the Supreme Court's opinion in *Johnson*, nor does it address whether an actual FDCPA violation had occurred under the facts of that case, so the analysis is altogether different. In *Howard*, while the defendant argued that "the filing of an improper [POC] in a bankruptcy proceeding cannot give rise to a cause of action for violating the FDCPA," the focus in that case was on the defendant's preemption argument that the Bankruptcy Code preempts the FDCPA because the Code already provides the debtor with a remedy regarding the filing of improper POCs. *Id.* at *3. As a result, Judge Gibson aptly applied the Third Circuit's analysis in *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 274 (3d Cir. 2013), to determine that "there is no direct

conflict between the [Bankruptcy] Code and the FDCPA and accordingly, no preemption," and he subsequently concluded that the plaintiff had made a plausible claim. *Id.* at *4, 6.

Defendants here, too, present a preemption argument in their briefs but, as in *Yavorka* and *Fike*, the Court finds that no preemption analysis is necessary because Plaintiffs' FDCPA claims here do not fail due to a conflict between two federal statutes; rather, they fail because Plaintiffs do not allege conduct violative of the FDCPA in the first place.[6] *See Yavorka*, 2020 WL 5747832, at *4; *Fike*, 2020 WL 5747811, at *3. Therefore, the Court finds that Plaintiffs have failed to state a plausible claim against Defendants for a violation of the FDCPA. Accordingly, to the extent Plaintiffs' FDCPA claims are based on Defendants' alleged failure to itemize the debt in the POCs in Plaintiffs' Bankruptcy, Defendants' Motions for Judgment on the Pleadings are granted, and Plaintiffs' claims are dismissed.

## IV. CONCLUSION

For the reasons stated, the Motions for Judgment on the Pleadings filed by Second Round (Docket No. 41) and Quantum3 (Docket No. 43) are both granted, and Plaintiffs' claims asserted against Defendants in the Amended Complaint are dismissed with prejudice.

An Order consistent with this Memorandum Opinion follows.

Dated:  March 6, 2024                                *s/ W. Scott Hardy*
                                                     W. Scott Hardy
                                                     United States District Judge

cc/ecf:  All counsel of record

---

[6] As Judge Baxter concluded in *Yavorka* and *Fike*, because the Court has determined here that the FDCPA is inapplicable to Plaintiffs' claims to the extent they are based on an alleged failure to itemize in the POCs, there is no need to address such claims separately under Section 1692e and Section 1692f. *See Yavorka*, 2020 WL 5747832, at *4 n.6; *Fike*, 2020 WL 5747811, at *3 n.5.